We'll hear argument first this morning in Case 09-10876, Volcoming v. New Mexico. Mr. Fisher. Mr. Chief Justice, and may it please the Court, the text, purpose, and history of the Confrontation Clause make it clear that the prosecution cannot introduce one person's testimonial statements through the in-court testimony of someone else. Thus, having held in Melendez-Diaz that lab analyst statements in a forensic lab report are testimonial, this is an easy case. The State violated the Confrontation Clause by introducing lab analyst Curtis Kaler's statements in a forensic lab report without putting him on the stand. The New Mexico Supreme Court resisted this analysis, straightforward as it is, on the ground that Mr. Volcoming, as the defendant, had the opportunity to cross-examine a substitute or a surrogate witness, Mr. Rosados. But a surrogate witness procedure violates all four components of the right to confrontation. It quite obviously violates the defendant's right to have the witness testify in his presence, in the presence of the jury, so the jury can observe it, and under oath, as happened in this case. Ginsburg. Do you mean it necessarily must be in the courtroom, or would a videoconferencing setup be permissible, so that the technician, the analyst, could testify from the lab, rather than it would be screened in the courthouse? Well, the default rule under the Confrontation Clause is in presence, in the courtroom. Now, in Maryland v. Craig, this Court held in a child witness setting, of course very different than this case, that closed circuit TV would be permissible. And I believe, you know, in a future case, if the State perhaps made some sort of showing the lab analyst couldn't come to court for some reason, and certainly if the defendant stipulated, maybe even if the defendant didn't stipulate, the Court could accommodate to that. Ginsburg. But let's suppose the defendant doesn't stipulate. Is this adequate to meet the Confrontation Clause? I don't think it would be adequate, Justice Ginsburg, with at least some, absolutely some showing of unavailability of the witness or making the witness unable to come to court. Now, there is an amicus brief in the case, I believe, that suggests some flexibility that trial judges might employ in accommodating lab analyst schedules. Scalia. What about police witnesses? What about not requiring the officer who took the confession or who witnessed the alleged crime, not requiring him to appear because he's busy? Well, that's never been the rule. He's out on the beat, so can we have him appear by television? That's never been the rule, Justice Scalia, and I don't think there would be a need to. Why is a lab technician different? I don't think one is, and you don't have to reach that in this case because the State never attempted to make any showing that Mr. Kaler was unavailable for any reason. It's simply a matter of time. Roberts, what if you had two people doing this procedure? They're sitting at, you know, chairs right next to each other. The one, you know, takes the blood samples from the vials, puts them in another vial and puts the aluminum stuff on and crimps it. The other one then takes the vials and puts it in the machine and runs it. Do you have to have both of them testify? Only if the State wants to present statements from them both. Roberts, no, they want to present the results of the blood analysis, the numbers the machine spits out. I think in that scenario, if both people were there for the whole thing, the State could have either one of them testify. What the State couldn't do, this is the rule. Even though one didn't do it, even though the question is going to be did you put the aluminum on and crimp it, and the answer is going to be no, Joe did it. He sits right next to me. That's right. The confrontation clause is a purely procedural right. I'm sorry. That's right. Do they both have to testify then or not? They do not have to. The confrontation clause is a purely procedural right. It all depends on what — whose statements the State wants to introduce. So if the State is satisfied to prove its case by having somebody testify saying I watched the thing go into the machine and I watched this result come out and I saw that it wasn't tampered with and it was Mr. Bullcumbing's sample, then that would  And in fact, what some labs do is to say that's fine. Kennedy, I don't understand that. How is that any different than the supervisor of the lab saying I know what these people do, I watched them on a day-to-day basis, and they performed their work correctly? Again, the question, Justice Kennedy, is not who the State has to bring in. The question is whose statements the State wants to introduce. Here the State wanted to introduce Mr. Kaler's statements, and so therefore it needs to bring in Mr. Kaler's. What the State wants to introduce is the result of the exam. And the Chief Justice gives you the hypotheticals that two people are necessary to the exam. You say only one has to be there if both saw it. If only the State has only introduced one person. But it's hearsay as to what the first person did with crimping the thing. It's not direct testimony from that person. You didn't say are you experienced in crimping? Did you use your right hand or your left hand? Is there a danger of spillage and so forth? All that's beyond the ability of the defense to ask. No, Justice Kennedy, I don't think it's hearsay. It's simply being an eyewitness and saying here's what I watched. I watched this person put it into the machine, and this is the result that I saw come out. Now, again, the only question is whose statements the State wants to introduce. By all means, Mr. Chief Justice and Justice Kennedy, if the State wanted to introduce statements from both of the lab analysts who worked together on the case, they would need to bring them both in. But if they only want to introduce one lab analyst. The State takes its chances, right? I mean, as to how much it has to bring in in order to persuade the jury. That's right. That's the decision the State makes in every case, whether it be multiple police investigators, multiple eyewitnesses. You always take your chances with a business record. That's a given, of course. Of course the State takes a chance with the admission of any admissible hearsay testimony that the jury will be the you'll make the argument to the jury that you should discount it because the person isn't there. That's always true. I'm not sure I disagree with anything you said, but the rule of the Confrontation Clause applies to particular kind of statements, testimonial statements. And our rule today, and the one that resolves this case is, if the State wants to introduce a witness's testimonial statements, it needs to bring that witness to court. Now, footnote 1 in Melendez-Bias. Kennedy, I take it it's a testimonial statement that this blood that was taken at the hospital was the blood of the defendant. That's a testimonial statement. Yes, I believe it would be. And so I assume that in this case the nurse and the police officer were both present. Yes, and in fact, this is what I assume under your position, you could not have a record showing that the nurse withdrew the sample at 10.08 p.m. on such and such a date and that she followed the regular procedure. That would be insufficient if the State wanted to introduce just a certificate or just that record. I think that's what footnote 1 in Melendez-Bias says. If the defendant wants to challenge the chain of custody, then the State needs to bring in the witnesses. Now, I think it's an interesting fact in this case, and it shows why that rule isn't so. Alito, I don't think that's what Melendez-Bias footnote 1 says. It says that the State may be able to prove chain of custody by testimony other than the actual individuals who handled the sample, and then it has to take its chances as to whether the trier of fact is going to believe that. Isn't that right? I think that's right. I think what footnote 1 says is the defendant, when the State chooses whose testimony it wants to introduce, the defendant has the right to insist that that be done live. Scalia, but does Melendez-Bias also say that if the defendant wants to challenge the chain of custody, the State can adopt rules that requires the defendant to assert that challenge or his intention to make that challenge prior to the trial so that the State will know whether it has to introduce any live testimony? Of course, that's correct, as are the notice and demand regimes that Melendez-Bias approved of, and the public, the PDS brief in this case showed that many States do use those regimes. Now, Justice Kennedy, I just wanted to say that. Kennedy, but the chain of custody does involve a testimonial statement that this is the blood that I took it out at 10.05 p.m. on Saturday evening. That's a testimonial statement. It's the defendant's blood. Yes, it can, Justice Kennedy, but chain of custody is approved by live witnesses every day in courtrooms across the country, long before Melendez-Bias or Crawford. It's not just chain of custody. I think the Chief Justice is trying to get at this problem, or I am. Lab technician Jones looks at a vial and it's blue. She says to Smith, it's blue. Smith turns a lever on a machine to beep. Jason sees the beep and goes into court. You make him go into court. That's our case. And what I wonder is, is the defendant now entitled to the following instruction? Jury. Because he's in court, he can say that the machine read beep, but that proves nothing about the vial. Nothing. All it proves is what someone said in the laboratory to another person. And those two people aren't in court. Now, that's, you see, that's the problem, I think, of the intermediate step. I'd either like to be told I'm wrong about that, you don't have to have them, or explain whatever you'd like. Fisherman. If I understand your hypothetical correctly, I think that if the defendant wanted to do this, the defendant could certainly make that argument to the jury, and the defendant, if he wanted to insist, if the prosecution wanted to tie the result, let's bring back to the facts of this case, wanted to tie the .21 to Mr. Bullcoming, by saying that was Mr. Bullcoming's sample, then they'd need to bring somebody into court if the defendant insisted upon it. But the one thing I want to add is that the public defender service brief makes clear and the facts of this case makes clear. It's going to be very rare that a defendant wants to do that. The defendant in this case wanted to stipulate to the nurse's blood draw and that it was his blood that was drawn in the hospital. It was the State that insisted on putting her on the stand. It happens in courtrooms all across the country. Kennedy, I'm just curious. I mean, you're saying that the defense has certain rights. Well, but if you want to tell us don't worry, it won't happen, I think that's an unacceptable argument. You're saying the defense has certain rights, and we have to presume there is a defense attorney who's going to afford his client every right the Constitution has. So the fact that we're not supposed to worry because it won't happen very often is, A, it seems to me an unlikely hypothetical, and, B, it seems to me irrelevant to your argument. Well, Justice Kennedy, I'll gladly accept B if we want to say that consequences are irrelevant, because I think that's what the Sixth Amendment is, what it is. But I think the only thing I would add is that all I can say is empirically in the States that have followed the rule we advocate today, long before Crawford or Melendez-Diaz, it simply is a manageable burden.  Scalia, I thought the Court put this worry behind us in Crawford. Wasn't the same worry raised in Crawford? Well, I think it was raised even more pointedly in Melendez-Diaz when it came to lab analysts, and I think in both places the Court, yes, set that aside. Said, yes, it may be something of a risk, but the States have managed it in the past, and there's no reason to think they can't manage it in the future.  Sotomayor, there are different types of hearsay involved here, or different types of statements. There's the reported self, which was Exhibit 1 that was introduced, and it has certain certifications by the analyst, that he followed certain procedures, et cetera. I'm assuming that you're claiming that those are the confrontation clause violations. That exhibit itself, because it is attesting or certifying to something. Yes. The witness is not a trial here. Yes. Mr. Kaler's certifications in the lab report, not only that the blood had a 0.21 blood alcohol content, but also that, oh, but. That also is what I summarized in saying that he followed certain procedures, that it was in accordance with law, et cetera. And also that it was Mr. Bullcoming's blood sample and that the sample had not been tampered with. That's the totality of the case. Now, if I might just finish my question. Let's assume that the raw data, the graphs that were made, were reviewed by a separate witness. He reviewed the data and says this data shows that the blood level concentration was 0.21 or 2 point whatever it was. Would that violate the confrontation clause using the raw data itself? I want to be clear that by raw data you mean the printout from a machine. The printout from a machine. Because it's used in different ways in the briefing. That wasn't introduced here, am I correct? It was neither – it was not introduced, and there's nothing in the record to show that Mr. Rosados even reviewed it. All right. So what he did was read the report. Let's assume he just took the raw data trial. I know we now have a chain of custody and someone would have to prove that this is the data related. To Mr. Bullcoming. But if that expert then read that data and testified that this was of a certain amount or percentage of alcohol, would that violate the confrontation clause? Probably not. Provided, as you say, the chain of custody had been either properly proved or stipulated to, I think an expert could take the stand and say, I'm looking at a graph and here's what the graph shows me. Now, you might get into. That's what the New Mexico Supreme Court suggested, didn't they? They said bring the printout from the gas, whatever, chromatograph, and then have an expert who was not the one who certified this was not K-law, but said, here's the graph that came out of the machine, and this is the way this process operates. In your answer to Justice Sotomayor, did you mean to agree with the New Mexico Supreme Court when they said printout plus an analyst who didn't do this particular run but knows how the process works? No, Justice Ginsburg. I'm certainly not here today to agree with the New Mexico Supreme Court. What they said doesn't make any sense in this case, because, A, the printout was never introduced into evidence or looked at, and, B, it would matter a great deal, and this is how I'm going to continue my answer, it would matter a great deal what was on the printout. If the printout is nothing more than a graph, and I don't think you can say that's a testimonial statement, if a printout comes out of a machine that also says at the top, blood sample was Donald Bull Cummings, here's the test that was run, et cetera, those may well be testimonial statements that the analyst triggered the machine to spit out. So the Fourth Circuit has wrestled with this issue in the Washington case, and you can look at the majority in the dissenting opinions in that case. I think the question would arise in that scenario, if the graphs were in or if the machine printouts were introduced into evidence, the question would be, are the machine printouts testimonial? And to the extent they are, you'd have the same problem in this case. To the extent they're not, as the Fourth Circuit suggested, at least to some degree they may not be, then you don't have a complication. Sotomayor What part do you see as testimonial or not? What can an outside expert look at? Fisher I think an expert can look at anything. The only question is what's introduced into evidence. There's no confrontation clause bar in expert reviewing whatever he wants. Sotomayor There's two different issues. One, what can be introduced into evidence, which is the reports themselves, and what can he or she testify to is a different question. That's a form of evidence. And so that's the line I'm trying to get you to describe for me, which is when does that testimony become a violation of the Confrontation Clause? Fisher In one of two scenarios, Justice Sotomayor. The first, which is the scenario we have in this case, when the report is introduced and it's testimonial. The second is that it's not introduced. Then you have a Confrontation Clause violation if the expert, and this is the words many lower courts have used, is a mere conduit for introducing the out-of-court testimonial statement. Alito Could we break this down in this way? I see three things that the three statements that the State was attempting to prove. The first was that the sample that was tested was the sample that was taken from the defendant. The second was that the standard procedures were followed in this case. And the third was that the result was .21. Would you agree with that? Those are the three things? Fisher I think there's one other thing, Justice Alito, which is that the sample had not been tampered with. Alito All right. The sample had not been tampered with. Now, as to the first three, in other words, everything other than the results, could the State prove those things without having, simply by introducing testimony regarding the way things were generally done in the lab and ask the jury to infer that the general procedures were followed in this particular case? Fisher I think that would be a question of State law, Justice Alito. Alito There wouldn't be a confrontation. There wouldn't be a confrontation clause question. Alito All right. Now, in this case, as I read the record, it seems to me that's what the prosecutor was attempting to do. This is on page 50 of the Joint Appendix, then. The analyst is beginning to testify, the second answer on page 50. So what we do is we will get the sample in the mail, et cetera. The analyst is beginning to testify about standard lab procedures. And then defense attorney says, Your Honor, I'm going to object to what's done in the status quo. I take that to mean what is generally done. I don't object to what was done in this case. So the defense attorney is preventing, is objecting to the prosecution's attempting to discharge its responsibility with respect to those first three propositions through testimony about standard procedures, and is insisting that the analyst provide the testimony that you say was a violation of the confrontation clause, namely testifying as to what was done in this particular case. Justice Alito, I think if you look earlier in the Joint Appendix, I believe it's at page 40, where the State for the first time says we're going to put Mr. Rosados on the stand instead of Mr. Kaler. There's an objection there as well that says you can't then put the document into evidence that Mr. Kaler wrote if he's not going to be on the stand. That's the critical objection here. Now, you're right. There's nothing wrong with Mr. Rosados having taken the stand in this case. There's nothing wrong with him having described typical procedures in the lab. I think the objection you're pointing to was the one that said, again, it's sort of a State law objection, saying he can't testify to something he doesn't have personal knowledge about, which is whether the procedures were followed in this case. But Mr. Rosados could certainly take the stand and testify to general procedures, but at page 54 and 55 of the Joint Appendix, he simply reads the reports, and he says he's not going to testify to general procedures, and he's not going to testify to general procedures, and he's not going to testify to general procedures. And so you have two confrontation cause violations, really. You have the report being introduced in the first instance, and then you have, I believe it's at 54 and 55 of the Joint Appendix, you have the prosecutor asking Mr. Rosados what was the result. He says the result was .21. As the State itself says at page 58, note 15 of its brief, there was no independent analysis being applied there. All Mr. Rosados was doing was repeating and giving the jury the conclusions that Mr. Kaler had reached. Alitoso, but if the machine had expelled a piece of paper that said .21, that piece of paper would not be a violation, introduction of that piece of paper, the contents of the piece of paper would not be a violation of the confrontation. If it said nothing more than a .21 coming out of the machine, I think probably not. Now, Judge Michael in the Fourth Circuit would disagree, and so that's an issue that's not in this case, and I think you could debate whether that should be considered hearsay of the operator. Alitoso, how can you debate it? The purpose of the confrontation clause is to allow cross-examination. How are you going to cross-examine the machine? Well, the question that would arise there would be whether the .21 should be treated as Mr. Kaler's statement. If I give you two hypotheticals, maybe it explains. On the one hand, I don't think anyone would claim that a time stamp on a fax machine, for example, is a human statement. It's a machine statement, and so therefore it can't be testimonial. On the other hand, if someone types out an affidavit on a word processor and hits print, you can't say, well, that's the machine talking, not the human. So the question arises in the lab context whether a .21 or anything else that comes out of the machine has enough human influence that it ought to be treated as the person's statement. Now, you don't have to resolve that in this case. And what's important to emphasize is that that hypothetical of the .21, even though the State would like it to be this case, is really miles away, for the reason you said, because the State proved a lot more than .21 by Mr. Kaler's lab report. And that's why these hypotheticals, I think, are important. Alitoso, but all of those other things could potentially be proven by indirect evidence, by establishing standard procedures and asking the jury to infer that the standard procedures were followed in this case. They might believe that, they might not. They might make the inference, they might not. The State could make that choice, but it would be a considerably weaker case, Justice Alito, not just because they wouldn't have anyone saying that the procedures were actually followed in this case, but also in this case it would be a far weaker case, because they would have somebody on the stand who would now be subject to cross-examination as to why he had been recently put on unpaid leave. Alitoso, but as to this case, didn't the defendant actually testify that he was drunk at the time of the he at the time when the blood was extracted? He took the stand and he testified that after the accident, he went off into the woods and he came upon people who were drinking vodka and he drank, they drank, what was it, a gallon of vodka together, and then he went back to the scene and his blood was tested. Isn't that correct? That was his defense, Justice Alito. And here's why the lab report is still important, though, because you're right, he did admit he was drunk. But remember, he was not convicted simply of DUI. He was convicted in New Mexico law of aggravated DUI. And to have aggravated DUI, you need to have up to a .16 blood alcohol content. So the report is the only way the State could have proved over .16, even if Mr. Bullcoming admitted that he had been drinking that day. So that's why it's important in this case. That's why he wanted to challenge. That's one reason why he wanted to challenge that report. Let me come back to the important point, I think, though, that what the State wants to be able to do, I don't want to ascribe a bad motive, but what the State's rule would allow States to do is to insulate people from cross-examination. Not just Mr. Kaler in this case, but please pay attention to, for example, the Dungo case that's cited in our opening brief from California. That's a case where a coroner had been fired from his job, blacklisted by law enforcement, and prohibited from testifying in many counties because he falsified his reports, his autopsy reports, by writing them with the police report sitting right next to him. Alito, but the State can't immunize those people from testifying. You could have subpoenaed Kaler, couldn't you? You could have asked for a continuance and a subpoena and brought him in to testify. It's just a question of who has to take the step, right? Well, we could have, but Melendez-Diaz makes clear that doesn't satisfy the Confrontation Clause. And when you deal especially with a garden variety DUI case, there's only so much time and resources at issue, and that's why the Confrontation Clause, I think, is especially important in a case like this, that the prosecution bring its witnesses into court. And if I could just finish the Dungo story, in the California Court of Appeal, when they reviewed that case, they said the prosecutor's intent in that case had been to shield Mr. — I'm sorry, the actual analyst in that case from cross-examination. And in fact, the supervisor, when he took the stand at the preliminary hearing, told the court, the reason why they have me here is the prosecutors find it too hard to have this person in court. So that would be perfectly permissible if the State win this case today and surrogate testimony were allowed. Ginsburg. How do you answer the practical situation that Kalar, who did this particular run, does them dozens, day in and day out, and he will have no memory, in fact, of this test, so having him there, he knows how the process operates, he doesn't remember this particular one. How does having him there, what could be enlisted on cross-examination of him that couldn't be from his supervisor? Let me give you two answers, Justice Ginsburg. But first, let me say we don't know whether somebody doesn't remember it until he's put on the stand. What the NACDL brief says is that even though analysts don't ordinarily remember run-of-the-mill tests like this, they do remember if something went wrong or if something went haywire. So we wouldn't know that. But assuming you're right, that's the case that these tests are unusual in this particular jurisdiction. That's my understanding, Justice Scalia. So that's another reason why he may have remembered. But even if he didn't, there's two things that could be importantly probed here. One is his credibility, and I've explained why that was a very serious issue in this case, because he was put on a leave. The other is his competence. Again, Melendez-Diaz says it's important to have the person on the stand to explain how he does his job, for the jury to observe his professionalism, for him to explain, here's my understanding of these procedures, et cetera. That can be very important. And if I could leave you with one thing before I close off. Scalia, I assume that even if he doesn't remember, his testimony is not worthless to the prosecution. The prosecution can bring out his high qualifications and he can testify, this is always the way I do it. I do it this way all the time. I don't remember this particular incident. All of that can be persuasive to the jury, can't it? Of course it can, Justice Scalia. And on the flip side, even if he doesn't remember, cross-examination is very important. If I could leave you with one thing that I think isn't highlighted in the brief, maybe the way it should have been. There's a line of cases from this Court, California v. Green, Delaware v. Fensterner, and United States v. Owens, that all hold that if a witness takes the stand and doesn't remember anything, that the Confrontation Clause is still satisfied, as long as that witness is on the stand for the reason Justice Scalia explained and because the jury can observe them, et cetera. And so the flip side of that has to be, it's the holding of Owens most recently, is that those are meaningful things that the Confrontation Clause requires. And so the flip side of those cases has to be that if the witness takes the stand and doesn't remember, the ineffectiveness potentially of a cross-examination there doesn't matter either. If I could reserve what little time I have left. Thank you, Mr. Fisher. General King. Mr. Chief Justice, and may it please the Court. As the Court said in Michigan v. Bryant, a police interrogation resembles an ex-party examination when the primary purpose of the interrogation is to create, quote, an out-of-court substitute for trial testimony, end quote. A public record not prepared by a police officer is not the product of structured interrogation. It is neither ex-party nor is it an examination. I understand that. You mean so long as all hearsay by non-police officers can be admitted without confrontation just because they are not police officers? No, Your Honor. I don't believe that that's the case. I didn't think that was your point, because it's certainly not true, is it? It is not my point, Your Honor. The point that I am making is that in this case, the document, the report that we're talking about is a public record, and that differentiates it from the affidavit in Melendez-Diaz. And so the case that we're talking about is a public record. Sotomayor, could you tell me what that means? Why is it different than the affidavit? It's certified, and my understanding of the dictionary meaning of certification is that that's an attestation as to the truth of the statements contained therein. That's the common definition. So I'm assuming it's the equivalent of an affidavit. So how is it different than the Melendez-Diaz lab report? Your Honor, and I understand and will answer your question with regard to your expectation that the certification is the same as the affidavit. It's not our position that they are exactly the same. But there are several distinguishing. Tell me how and why. There are other distinguishing features that are significant between the affidavit in Melendez-Diaz and the report in this case. For one, the affidavit in Melendez-Diaz was prepared pursuant to a statute in Massachusetts that called for the preparation of an affidavit from the lab at some point in time after the actual test was done. And it was to be used specifically as an in-court statement to replace the live in-court testimony of the affiant. In our case, the report being a public record was a record that is kept contemporaneously by the analyst in the lab. It is, in this case, the .21 is a single data point that's taken from the raw data in the machine and recorded on a standard document that's provided by the Kennedy Court. And that was prepared just for fun, not for use in trial? No, Your Honor. I believe that that statement is planned to be used in trial. And So what difference does it make whether the statute requires it to be taken to be used at trial or whether the police send it over to be used at trial as agents of the State? What difference does that make? Your Honor, I think the key is to look at the purpose of the analyst who was preparing the report, who is a public employee, who is just carrying out, as our Court said, copying the information from the machine onto the report. And so that's significantly different than the amount of analysis that was done by the witness in the Lendis case. I'm sorry. He's not simply looking at a number and putting it on a report. He's certifying to certain things. He's certifying to following certain steps that the evidence wasn't tampered with. He's certifying that he's complied with all the requirements of New Mexico law with respect to the report. So he's just not copying a number. That's correct, Your Honor. And in this case, the certification doesn't necessarily make the report testimonial. There are several other examples of cases where evidence is introduced at court that have certifications. For instance, it may be necessary for a public records custodian to provide a copy of a birth certificate in a trial, and in that case, the custodian always has a certification that says I certify the case. Sotomayor, the difference between those two documents is that one was prepared primarily for the purposes, this lab report, for prosecution purposes, and the birth certificate is not prepared for that. It's prepared to mark the birth of a person, and then it's used for many other purposes besides trial. Is that correct? That is correct with regard to the birth certificate, Your Honor. So tell me what makes this certificate not primarily for the purpose of use in the prosecution of an individual? Would they have tested this blood if it wasn't to prosecute him? Your Honor, in this case, no. This case is all about a sample that was sent to the lab to be tested for this. But I think that you made it clear in Michigan v. Bryant that there might be a variety of purposes that should be analyzed in order to decide whether or not the statement is testimonial or not. In this case, the purpose of the lab analyst is significantly different from the purpose of the police officer who requested the analysis. The lab analyst does this for a living. It's their public duty. The lab, in this case, is operated by the State Department of Health Scientific Lab Division, and they do a variety of different kinds of analysis. And so the analyst who does the test wouldn't necessarily have the same purpose in creating their statement for that document. As a matter of fact, the analyst would most likely be driven by the desire as a scientist to make — Does he do any testing except for the police? Yes, Your Honor. Who else do they test for? This lab also tests for, in this particular case, gas chromatograph analyses of blood samples. The lab analyst is a public examiner, and under New Mexico law, interestingly enough, the defendant can also ask for a test. They would use the same form to ask for this test, so the analysis might be being done for a defendant as well as for the State. Are these lab analysts civil service employees? Are the lab analysts civil service employees? Yes, Your Honor, they are. They work for the New Mexico Department of Health. Is there any way in which your office or prosecutors or the police could cause them not to get promotions if they weren't producing the kind of lab reports that the police and the prosecution might like? No, Your Honor, they could not. As a matter of fact, there is a separation between the operation of the Department of Health lab and the police that even extends to the point of a physical separation. Police officers are not allowed into the lab area where they are. This analyst was fired, as I recall. Was he fired, placed on administrative leave or something? No, Your Honor. The record indicates that Mr. Kaler was not available for court because he was on leave without pay. On leave without pay? And do we know why it was leave without pay? We don't know why, Your Honor. Does the defense know why it was leave without pay? Could the defense have found out in cross-examination that the reason he was leave without pay was because he had shown himself to be incompetent and they were in the process of firing him? I don't know whether that's true, but wouldn't that be important to the defense? Your Honor, I think that the defense would like to know the answer to that question. And didn't the prosecution intentionally set it up this way so that this person would not have to testify, so that he could not be cross-examined? Isn't that why they sent the substitute to testify? No, Your Honor. In this case, that's not the case. This case came about in a little bit of an unusual circumstance because both sides had been negotiating a plea agreement, and when the plea agreement was not successful, the defendant asked for the trial to be expedited and moved quickly to trial. So the defendant didn't do as much discovery, I think, as you would normally do in a case like that. But the fact is, I don't know what the facts are, but, boy, it smells bad to me. It really does. And even if that was not the case, the mere possibility that it could have been the case shows why you should have to bring this person in, if you want to introduce his testimony. Your Honor, I think that the key here is that if you would not look at the any of the qualities of the declarant in deciding whether the statement is testimonial or not. And so once the Court makes a determination as to whether it is testimonial or not, you wouldn't, even if you would like to ask those questions, you wouldn't have the opportunity to ask those questions. In this case, factually, it might also be that Mr. Kaler was on unpaid leave because he had run out of his regular leave time and he decided to do that. It would all be calculated. I agree that whether it's testimonial does not depend upon whether there's skullduggery or not. But the possibility of skullduggery, even in machine situations such as this, is a good reason for saying this is testimonial. Your Honor, I think that's why it's important that this is a public records case, because that is one of the assumptions that courts have made for hundreds of years with regard to the fact that there is a duty by the person who's taking down the information to observe in a regular manner, to record in a regular manner. And so that's important here. I think that's important here. Ginsburg That was the principal thrust of your brief, that this isn't testimonial at all. You have not said, because it was unsworn, because you recognize the certification is the same, but you're trying to equate it to a business record, a public record? Yes, Your Honor. And you do have the hurdle that this record was created for a specific purpose. It was created to provide evidence for use in a criminal prosecution. Your Honor, I don't believe that that is the only purpose that this Form 705 could be used for. It is the common purpose for this form, but it is a form that the lab uses in every circumstance. And indeed, as I said, in New Mexico law, the defendant can ask for a second test. They can have that done. It's done at the State's expense. They can have it done at any laboratory that they want to. But if they have the report done at the State lab and they're entitled to have that done, they would utilize the same form. But what did the analyst say? Does the analyst know whether he's being asked to do one for the prosecution or for the defendant? Not necessarily, Your Honor. I actually don't know the answer to that specifically, except that the form, if you look at it, it's in the Joint Appendix, it does have some information in Part A that indicates that there is a police officer that sent the test to the lab. There's a nurse that did that, and in this case, we won't talk about it. They – I think that the same information would be on the form whether the defendant submitted it or whether the prosecution submitted it. And the other one would say the defendant submitted it, right? Your Honor, if the police submitted it, the person doing the test would know that the police submitted it, I assume. If you look at the form, Your Honor, it would have the same information. But we're not here today arguing that the analyst wouldn't know that the police submitted this form. But it is an arms-linked request. And once again, the Court addressed that in your most recent case, in Michigan v. Bryant. I believe because the question is whether or not there was an interrogation. One of the key questions is whether there was an interrogation. This clearly does not look like a case where there was an interrogation by the police. It was a request on a standard form that was sent. And so the purpose test, it appears, from Michigan v. Bryant would not even apply in  And so the question is whether or not there was an interrogation. Scalia, why is a key question whether this was an interrogation? Does the Confrontation Clause apply only to confrontations? To interrogations? I mean, if a witness, before the police ask any questions, blurts out, you know, Jones did it, can that statement get in because it has not been in response to an interrogation? Your Honor, the analysis would be somewhat different. That's the point, is that It would be different because interrogation doesn't make any difference. That is not the condition for the application of the Confrontation Clause. Your Honor, it appears that it does make some difference with regard to Michigan v. Bryant, and it's new to all of us. If it were an interrogation, the factors mentioned in Michigan v. Bryant would be relevant, presumably. But since this wasn't an interrogation, I don't see how that has any relevance, whatever. Well, the relevance, Your Honor, I think is since it's not an interrogation, then you have to look at, and I think the Court has set this out, you have to look at the nature of the evidence and to make a determination as to whether the evidence that's being presented is merely a substitute for live in-court testimony. And there, back to the difference between the affidavit in Melendez-Diaz and the report in this case, is in our report, even if Mr. Kaler had been at the trial and on the stand, it would have been necessary to have the report as well. I think Justice Ginsburg raised this point, is that six months after the examination was done, to cross-examine the analyst and ask him, do you remember what the result was six months ago from this one test out of 100 that you ran, he will not remember without looking at the report. The report is the best evidence in this case to prove the point that is being made here. And he'd look at the report and say, gee, I don't remember, you know, I do a lot of these reports. But then the prosecution in direct would say, well, how do you do them? And he would say, I always do this, I always do that, I always do the other thing. Did you do it in this case? Well, I don't specifically remember this case, but I always do it. And that's the testimony that would go to the jury. It would be pretty persuasive, not as good as if he did remember. It's correct, Your Honor. And so that's why the analysis of whether this is testimonial or not is such an important analysis, because if the reasoning that the Court has had for all of the hearsay exceptions, for excited utterances or in this case for a public record, would look at whether or not that evidence was the best evidence to support the truth-finding purpose of the trial. That's our analysis, at least, Your Honor. And what we are arguing in this case is that there is no difference between Mr. Kaler transferring the .21 data from the machine to the piece of paper than there would be if you took a photograph, for instance, of the machine data and wanted to go on to the trial. Sotomayor So why didn't you give the data to the analyst at trial? If there wasn't a more persuasive power in the lab certification, why didn't you just have the new expert look at the printout from the graph and say, this is what it says? Procedurally, in this case, Your Honor, this the trial at the district court level occurred before the Court's opinion in Melendez-Diaz, and so I think that at this point, it's normal behavior for the State to present the raw data as well. In this case, Mr. Rezai. Sotomayor That's that as well. Don't you introduce the lab report because it gives more credence to the reliability of the result? Is he certifying that he followed certain procedures, that he did certain things, that the sample wasn't tampered with? You're looking for that testimony, correct? You're looking at trial to that testimony to bolster the text. Rezai Not using testimony in the sense that we're talking about testimony here. I mean, you might want that, very well want that evidence in, not different from other cases where if you had a – it was necessary to submit the judgment of a felony, for instance, to show that a person in a later trial was a felon in – with a felon in possession of a firearm, you would have a certification from the court clerk that would say, I certify that the copy of this document that I'm submitting to the court is a true copy of that. That's also not testimonial from – for the purposes of the Confrontation Clause, I don't believe. Breyer You might want that in order to show the machine says X, Y, Z, but that's only as good as the stuff that was put into it. So you're going to have to show that this was his blood put into it, and many, many people might have handled it. And there might be a routine so that they all check a box when it's sealed and they get it. Is it your understanding if you lose these cases, this case, that you then have to take into court all those people? Rezai That's certainly a concern, Your Honor. I – if you look at this document, there are six or seven people who have certifications on the – or different statements on the document. There are three certifications. There's one from the woman who takes the samples into the lab that says she received the samples. There's this one from Mr. Kaler. There's one from the reviewing analyst who reviews it. And I gather that the Petitioner is only challenging that one certification from Mr. Kaler. Scalia The change of custody wasn't contested here, was it? Rezai It was not. And this document – Scalia Is it often contested? My impression is it's not very often contested. Rezai I'm not aware of it being contested often, Your Honor. And this form, I think, is one of the things in New Mexico that really helps with that. It's the reason that the Court submitted the form, is that you have everything relating to the chain of evidence on one document. And so, indeed, a lot of those statements really help. Breyer No, but the reason I ask the question is because I don't think it is normally contested. It's normally a business record of some kind. However, what I'm looking for is a distinction, because in the future, I don't see why it wouldn't be contested unless there's a distinction. Rezai Yes, Your Honor. And I think that the distinction is that in this case, the analyst is not essentially a party to the action. The analyst works arm's-length transaction from the police and from the prosecutors. And so he's not part of the prosecution team, is how I've been thinking about it. Scalia General, I know your State takes a different view of it, or you wouldn't be here, but aren't there a number of States that do provide the testimony of the technician, who do require the technician to come in and testify? Rezai Your Honor, I believe that there are other States that have statutes that have different ways of presenting evidence. Scalia And have they had, to your knowledge, serious problems about defendants contesting chain of custody simply because this other thing is required? Again, I'm not aware that that's been a problem. I think it's a boogeyman. Rezai Your Honor, we understand that the burden on the State is not an issue that comes directly into the analysis relating to the Confrontation Clause. In New Mexico, for instance, one of the problems that we have is that the lab centrally located in Albuquerque, and in this case, the trial was in San Juan County. So the witness has to drive for about three hours to get to where the courthouse is. So that's sort of different in New Mexico than, say, in Massachusetts or something like that. And even for 10 minutes' worth of testimony, they might have to drive six hours and take a whole day out of the lab. So it is a problem that is there, but I don't think that it is the seminal issue that would determine whether it's a problem. Breyer Are there States that do require a prosecutor to produce everyone who has handled something in a chain of custody at a laboratory, criminal, you know, normal business? Are there States that do require that? If so, could you tell me a couple, because I'd like to know. Rezai Your Honor, I'm not aware of any State that would require that everyone in the chain of custody appear in trial. It is, indeed, normally up to the prosecutor with regard to chain of custody to determine who's going to be appearing. Breyer What about medical reports that are aimed at a particular known victim of a crime and thus will end up in trial? For example, a graph, a graph which the nurse keeps, which is a statement by the nurse that the patient's temperature on such and such a day was 98.6 or whatever. Normally that graph would be introduced, but are there any States that wouldn't require, would say, oh, no, you have to produce the nurse, you have to produce the doctor, for all medical records, which, of course, are known by the keeper. That they will be used at the criminal trial. Are there any States that require that? Rezai There are none that I'm aware of, Your Honor. I don't, I haven't seen any States. Breyer Are there any States that require ordinary business records, perhaps of the most ordinary kind, which always are statements that somebody did something on a particular day, when those business records happen to be kept for, with the knowledge that, they'll probably be introduced at a trial. Are there States that require the man or woman who made the business record to come  Rezai No, Your Honor. And I think that's the point of all of those. State law has their hearsay law that, that, that analyzed whether or not those statements are admissible. Scalia I don't think that's an accurate response, at least if you include the qualification that Justice Breyer put in the question, which is that the records were kept with the knowledge that they would be introduced in, in criminal trials. I mean, you can say that all the records of labs, let's assume there's a, there's a police lab, which, which, which only does police testing of blood, those would be business records of the lab, but they certainly would not be introducible just because they're business records. If the record's made for the use in prosecution, surely it's, it doesn't come under the business records exception, or else we wouldn't be here today. Your Honor, I think the hypothetical that, that you say really shows where the line is. If, if the lab is a police lab and only doing the analysis for the police, then they, they look a lot more like a party to the, to the lawsuit. And certainly, the, the hearsay exceptions have made it clear that, even though observations are, are generally, that are public records, are generally allowed, that observations by police officers are not. And, and so. It's an independent lab, and the police always send it to this independent lab, but in fact, it's an independent business. It makes a profit, but all the stuff it does, it knows is going to be used at trial. That wouldn't be admissible, would it, even though it's a perfectly normal business record? Your Honor, I think that that depends on, on how you look at the purpose and whose purpose it is that, that you're analyzing now. First off, that would assume that, that the purpose test applies in this case. And, and it seems to me, since Michigan v. Bryant, that the purpose test may not apply to these kinds of cases where, where there's not a police interrogation. But if, if that is the case, and the purpose test applies, then it, it also appears to me that, that the, that the test now requires that, that you look not just at the purpose of the policeman who, who's asking the question, but that you look at the purpose of the clerant. And in this case, the purpose of the labs clearly is, is a purpose just to, to get the sample, do a good analysis, and, and report that analysis to, in New Mexico's case, both parties. The, the analysis that comes from our State lab goes not only to the prosecution, but also to the defense. Ginsburg. Ginsburg. GINSBURG. General, you seem to be describing this, this, this case seemed rather particular. That is, there was no objection by New Mexico to having an analyst show up, with that source, showed up. So he had to travel however long you said. It's just a question of one employee's time rather than the other. But, and then you described how simple this thing was. You just put it in the machine, and you get out a piece of paper. Why didn't New Mexico have this, there was an additional sample? If that could have been, it would have been so simple to just retest it. Having the witness come to the court, why don't you arm him with the additional test, and then there'd be no controversy? Your Honor, one of the problems in New Mexico would be, since, since the Court believed that that report was admissible, if they did a second sample and tried to admit that, it would be cumulative evidence and probably would be kept out by the rule in New Mexico in that case. Mr. Rosatos did have an important purpose at this trial, and in New Mexico, you still, I believe, have to have a witness who can authenticate the document to bring the document in. It might not have had to have been Mr. Rosatos in this case. Kennedy. Well, let's say that this Court holds that the Confrontation Clause requires the presence of the actual analyst to testify about the sample. Is there anything in the law that says that that testimony is suddenly excused and you do not need the analyst if there's another sample available for the defendant to test? That's not the rule, is it? It's not the rule, Your Honor, although one of the things that we pointed out is that the State always keeps two samples, that the defendant has the right, statutorily in New Mexico, to have a sample retested at a lab at the court. Kennedy. But I'm saying that analytically that does not bear on the question whether or not the sample that's introduced by the State requires the analyst to be present. They're just unrelated. Correct, Your Honor. That may show that the confrontation rule is a silly rule, but it doesn't. But assuming confrontation is required, it's not excused by the presence of another sample. I'm don't follow that, because we have a substitute now. K-Lor is out of the picture. We know that it is the defendant's blood, because everything else is the same, and there's this vial that had a certain amount of blood and a certain amount left over. So it's not cumulative, because K-Lor is out of the picture. It is the defendant's blood that has been now tested by another analyst. I'm sorry, Your Honor. In your hypothetical, if the State knew far enough ahead of time that they would not be able to submit that analyst's results, they could always, because the blood sample continues to exist, they could always retest that and have another witness who could do that. Depending on how the Court rules in this case, it might be that States will be required to do that. But at this point in time, under the current jurisprudence, it didn't appear to the State that they needed to retest the sample. And I think you have to worry a little bit about how many people you might indeed have to have come into court and testify. If the burden on the State is that you have to sample twice just in case you're going to lose one of your analysts, I think that that does indeed put a great burden on the State to do that. And so I don't want to eat up your little remaining time. I think you can answer yes or no. Does New Mexico assert that the same rule is applicable to ballistics testing? No, Your Honor. Why? So I think that you have to do the analysis in each kind of statement that you're looking at, Your Honor, to determine whether or not the statement that's being made and that's being proposed for trial is a substitute for live in-court testimony. And so with regard to ballistics, you know, you would be looking at a little bit different set of facts. But in this case, the facts are that the gas chromatograph gave us a printout that said that the level of alcohol in the blood is .21 grams per 100 milliliters. Mr. Kaler transferred that to a form, and that's what we're putting in. I think that it proves the point that I'm talking about. In a ballistics analysis, you would have to have some analysis and someone to reach a conclusion. And it's that that sets Melendez-Diaz apart from this case, is that there was some analysis by the clarent in that case. And in the ballistics cases, I think most often you would find that. Now, if in the ballistics case you just took a photograph of the bullet and wanted to bring that into the court and say, here's what the bullet looks like, the jury then could make a determination whether they think that that bullet appears to be the same as the other. That wouldn't be covered by the Confrontation Clause. Certainly not. And you think the result would be the same if we could develop a machine that you put the bullet in and the one that's been fired from this gun and the murder bullet and the machine goes and it spits out, you know, 99 percent, 99.9 percent match. That would be okay. May I answer the question, Your Honor? Yes. In that case, if the machine were able to do all of that, the machine essentially is giving you the best evidence? Yes, I believe that that would be the case. Thank you, counsel. Mr. Fisher, you have two minutes remaining. Thank you. Let me try to make four quick points. First, Justice Alito, I said the first objection was at JA40. It's actually 4445 in the joint appendix. With regard to the State's argument about whether this document is testimonial, I'd simply urge the Court to take a very close look at the lab report itself. It's at JA62. At the top it says, Mr. Chief Justice, in response to your question, arresting officer identification, and the officer writes, check for blood alcohol concentration. That's the order to the lab. If you look at the bottom in the certification of analyst, he certifies that the following is true and correct, signs his name. And perhaps the most critical thing is at the very bottom, the actual rules of the New Mexico evidence law and criminal procedure law are referenced. So it's exactly like Melendez-Diaz. This is a document that is expressly prepared for a substitute live testimony. Kennedy, not under oath, though. That's the only difference. Fisher, not under oath. If a certification is actually different than an oath, that just makes this worse. As in Crawford, this Court said that it would be implausible that trial by affidavit would be prohibited, but trial by unsworn affidavit would be okay. Kennedy, do the rules of criminal procedure in New Mexico say that it should be prima facie evidence? Fisher, they say much the same thing. There are several rules referenced at the bottom that all make this automatically admissible, notwithstanding the hearsay rule to prove the truth of matter asserted. With respect to Justice Ginsburg's question about retesting, you are exactly right. The State had many choices in this case about how to proceed, but if it wanted Mr. Rosados to be its witness, all it had to do was have him do a retest it and write a new report and have him be the witness. There's no reason it would have had to introduce Mr. Kaler's report then and come up against any State law issue. Mr. Rosados could have been the live witness. Roberts, well, it depends on when they do it, of course. I mean, you have a right to look at their evidence, presumably so far in advance of trial and whatever, and if they had to get a new technician, that would have to put off the trial. Fisher, I'm sorry. I think that goes to my last point, which is, Justice Breyer, you're talking about States that do this. I'll combine my answer to these two things. A continuance would have been perfectly appropriate if that scenario had arisen, Mr. Chief Justice. And that's what one thing, the Public Defender Service brief, that talks about 23 — 26 jurisdictions encompassing 23 different States that follow the rule that we're advocating today. And it had — and we're not asking for more witnesses. It's important that we're not — this is a multiple witness problem. We're just asking for a different witness. Roberts, the State just brought the wrong witness. Thank you. Roberts, thank you, counsel. The case is submitted.